STATE of Minnesota, Respondent,

v.

**Stephen Al FRANK, Appellant.**

No. C4-84-1631.

Court of Appeals of Minnesota.

April 2, 1985.

D. Gerald Wilhelm, Fairmont, for respondent.

Gregory E. Kuderer, Erickson, Zierke, Kuderer, Myster, Madsen & Wollschlager, P.A., Fairmont, for appellant.

Considered and decided by POPOVICH, C.J., and LANSING and HUSPENI, JJ., with oral argument waived.

## SUMMARY OPINION

LANSING, Judge.

### FACTS

Stephen Al Frank was arrested on February 19, 1983, for D.W.I. A police officer read Frank the implied consent advisory, including the statutory language that Frank's driver's license "may be revoked" for 90 days or more if a chemical test showed him to be under the influence. *See* Minn.Stat. § 169.123, subd. 2(b)(3) (1984). Frank submitted to a breath test, which measured an alcohol concentration of .24, and was given a notice and order of revocation by the police officer.

At Frank's subsequent criminal trial for D.W.I. he moved to suppress the results of the test, claiming he was misled by the implied consent advisory language. The trial court denied the motion to suppress, and this court denied discretionary review. After stipulating to certain facts, Frank was convicted of violating Minn.Stat. § 169.121, subd. 1(d) (1984). He appeals the conviction.

### DECISION

The issue raised by this appeal is whether the language of Minn.Stat. § 169.123, subd. 2(b)(3) (1984), misleads drivers who are offered chemical tests under the implied consent law. Stephen Frank does not dispute that the advisory given to him was consistent with the statutory requirements. Frank argues, however, that the statute

itself is defective. He contends that the language in the implied consent advisory stating that driving privileges "may" be revoked if a chemical test shows him to be under the influence violates due process because it misrepresents the actual consequences of taking the test. He argues that use of the word "may" could lead a driver to believe that the loss of license is discretionary, when in actuality the revocation is mandatory for those drivers whose alcohol concentration is 0.10 or more. *See* Minn. Stat. § 169.123, subd. 4 (1984). In addition, Frank alleges that the advisory is misleading because it states that a driver's license "will" be revoked if the test is refused, but only that the license "may" be revoked if the driver takes and fails a chemical test. *Compare id.* § 169.123, subd. 2(b)(2) *with* § 169.123, subd. 2(b)(3).

We do not agree that the implied consent advisory is misleading. A person whose alcohol concentration is between 0.05 and 0.10 may be under the influence, but that person does not necessarily lose driving privileges. *See id.* § 169.121, subd. 1(a), (d) & subd. 2(a); *see also id.*, subd. 8. Although loss of driving privileges for those whose alcohol concentration is 0.10 or more is not discretionary, neither is it automatic. While the driver's license or permit is taken immediately after failing the test, a temporary license effective for seven days is issued simultaneously. *See id.* § 169.123, subd. 5a. Actual loss of driving privileges is contingent on the outcome of the implied consent hearing on whether the police officer had probable cause to believe the driver had been driving while under the influence of alcohol. *See id.* § 169.123, subd. 4. In addition, revocations are subject to administrative review, *see id.* § 169.123, subd. 5b, judicial review, *see id.* § 169.123, subd. 5c, and reversal. It may be preferable for the advisory to use parallel language in describing the consequences of refusing the test and of taking the test and failing. However, because of the contingencies involved, we find the advisory language in Minn.Stat. § 169.123, subd. 2(b)(3), is accu-

rate and does not violate Frank's due process rights.

Affirmed.